Good morning, Your Honor. My name is Jonathan Kopp, and I represent the petitioner Seferino Mendez. The issue in this petition for review is whether the BIA abused its discretion when it denied petitioner a reinstatement of his asylum application in a new hearing before an immigration judge. The written application for asylum expresses a prima facie claim to a well-founded fear of persecution on account of the petitioner's political opinion. Neither BIA nor Respondent in its answering brief dispute that the written application expresses a subjective, genuine subjective fear of persecution in Mexico. The application alleges facts that would compel any reasonable fact-finder to conclude that the petitioner's genuine subjective fear is objectively reasonable. SEFERINO MENDEZ-GUTIERREZ We sent it back for determination as to future prosecution and persecution. And as I understand it, this persecution because the political party to which he belongs, which is the political party of the President of Mexico, was that issue — that issue, though, didn't come up, as I understand it, because the board decided there was no prima facie case, because only — you filed only three pages, and nothing was in there to show a prima facie case. Is that where we are now? And if so, what was there in your three pages that showed the — what would they consider a prima facie case of persecution? Well, I don't think that the board was confined to the — to the submission that was made after the remand. I think that when the court remanded the case to the Board of Immigration Appeals, they tasked the BIA with the duty to complete the job that it began. Okay, that's fair enough. You could refer back to what happened before, but you have responsibility to show a prima facie case. The BIA doesn't have to go find it for you. What was there in the three pages you filed before the BIA that showed a prima facie case of future persecution? The submission that was made to the BIA addressed the written application itself, the four corners of the application. A motion to reinstate is analogous to a motion to reopen, because both require a prima facie showing. But what you're saying is that you did not show a prima facie case of future persecution in the three pages you filed before the board. Is that correct? The issue is whether the written application itself stated the claim, not whether the submission to the BIA stated the claim. Well, I — we can continue with this for your full 10 minutes, but can you show me in the three pages where you showed a prima facie case of future persecution? The submission argued that the application itself made that. That's your answer. Yes, Your Honor. Let me see if I have this correct. Early on, there was an application for asylum and withholding. Is that right? Originally, there was an application for asylum that was withdrawn. And that was withdrawn. And then later, there was an effort to reinstate the asylum application. Do I have that right? Yes. The attorney that was representing the Petitioner at his removal hearing erroneously believed that the Petitioner was eligible for cancellation of removal. And he withdrew the asylum application in favor of going forward on the cancellation application. When it was determined that, in fact, he was statutorily ineligible for cancellation because of the stop-time rule, the counsel attempted to reinstate the application. And was the – is the question before us the propriety of the BIA-slash-IJ's rejection of that effort? No. The BIA, in its original order in 2002, said that the immigration judge acted inappropriately and that it was reasonable for, given the circumstances of the case, for the Petitioner to want to reinstate his application. The BIA denied reinstatement initially because it found that the application didn't state a prima facie case of past persecution. I think that this, addressing the Court's question, it's a continuing process for the BIA. It began its analysis of this application in 2002 because of its error. It didn't complete its – its analysis of eligibility. When we sent it back in 2003, when this Court sent it back to the BIA, what was before the BIA? The BIA – the Court's remand order required that the BIA determine if the application is filed showed a prima facie case of a well-founded fear of persecution. In other words, the – the remand order didn't require the Petitioner to – to submit new – new evidence. And I think that that's really the crux of this, is the difference between a motion for reinstatement and a motion to reopen. A motion to reopen is – requires new evidence, but this reinstatement is – is not really exactly the same thing. It's whether or not back when this motion was originally made in 1998, whether that application, just based on the factual assertions made in the immigration form, stated just the basic case. The BIA, when it got the case back from the Court, imposed on the Petitioner a new and his – his claim. But the Court's remand order didn't make any kind of factual findings regarding the objective nature of the fame – the claim. It said that maybe it was – it was going to be difficult once that hearing occurred before the agency to – to satisfy the claim, but it said specifically that it didn't even have the jurisdiction to make that – that finding about the country conditions in Mexico in the first instance. It remanded it back to the Board of Immigration Appeals to do that. The administrative record of page 11 shows that when the Board sent this case back – when the Board contacted Petitioner after the remand, it did not ask for new evidence. It didn't say that we're treating this as a motion to reopen. What it requested was a new brief. And assertions that are made in a brief do not constitute evidence. If the BIA wanted new evidence, if the BIA was going to transform this motion to reinstate into a motion to reopen, then it should have given the Petitioner express notice of that fact. Given the totality of these events, the history of this case, and the express terms of the remand order, Petitioner was reasonable in assuming that what was before the Board was this application and whether or not the application itself stated the claim. Let's assume that you're over the rather significant hurdle that Judge Wallace pointed to. In a nutshell, what's your client's basis for claiming asylum? Well, he claims in his member of the PAN, he claims that the Mexican federal police would harass him, threaten him with death, took him from his home to a desolate place. They instilled in him a fear of his imminent physical harm. And whether the elections come and go and different parties take power, but the – whether the police themselves continue to want to pursue persons that they perceive as being their opponents doesn't necessarily change. Where does it say he was threatened with death? He said he believed he would be killed, but I don't think he says that he was ever threatened by the police with death. Is that true? Well, the application claims that the – they came to his home. Right. That they, with – using different excuses, that they threatened him. They frightened him. They threatened – at page 150 of the administrative record. But there was a threat that seemed to get worse every time. It doesn't say what the threat was. Right. The application is not – Right. I think it gets back to Judge Wallace's question initially. It doesn't appear that this states a prima facie case on its own. Well – I mean, it's hard to – well, it's a tough – I think it's a stretch to say the application satisfies the elements. Your contention seems to be otherwise, that you need – that the board is obligated to do more. But what's your best argument under our case law that if we accept everything that's true in here, that's enough to get eligibility for asylum? Well, that the petitioner does not have to prove past persecution, and it's already been determined that these factual allegations in and of themselves don't constitute past persecution. But if a well-founded fear can be maintained even in the absence of past persecution – Right. Well, I mean, I think that in order to say that these threats do not give rise to well-founded fear, you have to take the next step, which is – which turns on what are the current country conditions and whether or not the petitioner was given a fair opportunity to really present a full hearing on his application, whether he's being cut off at the pass by the Board of Immigration Appeals, not even letting him back to the immigration judge, when, again, what we're dealing with is not a motion to reopen, but a motion to reinstate the application that the BIA says was wrongfully denied back in 1998. I don't quite understand why you keep going back to the denial there. All that we asked for was a prima facie case, prima facie showing the future persecution. You could have a new affidavit. You could refer to the record as a whole. It had nothing to do with reestablishing some error that was done below. All we asked for was a prima facie showing. Prima facie showing that he's subject to future persecution. That's all. And we even point out that it's doubtful you can do it because of the change in presidency, but we give you the opportunity before the Board. You file three pages. You've been unable to identify where in those three pages that you've demonstrated a prima facie case of future persecution. We said that's all we sent it down for is a prima facie case. Nothing to do with reinstatement. And I don't understand how we get into the reinstatement. That is not what we ask for. We ask for a prima facie showing of future persecution, which, to my reading of it, isn't in your three-page petition to the Board. You can respond to the question. Again, the procedural context that this case arose in and that the Court remanded it to the Board was in the context of a motion to reinstate. And it's not — It wasn't. We found up here that there was no past persecution, but they had ruled on future persecution. All we did was remand back to see if you could demonstrate a prima facie showing of future persecution. It had nothing to do with anything else. We specifically sent it. That's why we sent it back. Well, Your Honor, the way I interpreted the Court's remand order and how I interpreted the procedural state of the case when it went back to the Board of Immigration Appeals was that it was not the appropriate place to introduce new evidence. It was, in effect, that the petition was back in front of the immigration judge in 1998, whether or not that application at that time stated facts that showed a subjective fear of persecution and objective facts that would make that fear less obvious. You understand that there's nothing like that in the last paragraph of our opinion? You're interpreting what that last paragraph means, and you interpret it that way. Well, that's because the Court's remand order speaks in terms of the past tense. It says whether or not the application has shown a well-founded fear. A prima facie case for eligibility of asylum. Right. Okay. Thank you. I think we understand your position. We'll hear from the government at this time. Mr. Molina. May it please the Court, my name is Ernesto Molina with the U.S. Department of Justice's Office of Immigration Litigation, and I represent the Attorney General Alberto Gonzalez in this case. In this case, the Court addresses an alien who has failed to take advantage of the BIA's opportunity to add to whether or not he's provided a prima facie case of a well-founded fear of persecution. In light of that failure, the Board said that certain concerns that were raised by this Court in its first decision were outstanding, shall we say, and on that basis, the Board made its independent finding that no prima facie case of well-founded fear had been established. Let me ask you a question. Certainly, Your Honor. One of the issues here, it appears to me, is what we are requesting the Board to do and can the Board do any further. In the bottom of our opinions, accordingly, we grant the petition and remand the BIA for reconsideration of whether Mendez Gutierrez has established a prima facie case of eligibility for asylum. Okay. Let's assume you're right. Let's assume that the petition did not show a prima facie case for future persecution. However, can claimant bring up other issues? For example, the issue he wishes to bring up now, that the initial pleading was inappropriate because it did not identify the officer who signed it. Have we restricted the Board by our language that they are only to consider what we ask them to do or can the Board decide whatever the Board wants to do on other issues? And I'd like to have the position of the government on that. Is the Board restricted to what we say on our remand order? Certainly, Your Honor. And the clear answer to your question that the government will put forward is, yes, the Board is restricted, but that comes with a however. And the however is the Board of Immigration Appeals is, of course, a very special executive agency and retains certain authority to reopen a case on its own motion, sua sponte. Of course. Of course. Putting that aside. They could always bring a motion to reopen. Right. Putting that aside, the answer is, yes, the Board is limited to the court's submissions for two related reasons, the law of the case doctrine and the scope of mandate doctrine. Now, this court has always explained that when it remands a case, whether that remand is limited may be either explicit or implied. The government submits in this case, it's explicit in that the court remands for the very specific purpose to reconsider the prima facie finding. Because it had already determined, the Board had found there was no past persecution but had not addressed the question of future persecution. Therefore, when the case came back to the Board, the only issue that had been remanded to it per the court's order, express order, was that loan issue. So basically, you're not saying there's any regulatory or statutory prohibition or limitation on the BIA. You're relying on common law doctrines, right? That's basically it, Your Honor. Let me follow up on that a minute because it's a related issue. There was a motion filed on remand to motion to terminate the removal proceedings. And the BIA said, well, we can't do that because it's not in the remand order. But our case law, our common law, is that if there's a motion filed before the BIA, it has the duty to address it. And it did not. Oh, I'm sorry. Actually, Your Honor, it did address it and decided that it was not going to address the matter as it was outside the scope of the court's jurisdiction. Or mandate. How was that addressing it? Sorry. How was that addressing it? They addressed it by deciding not to address it. They addressed it by indicating that it was not properly raised before it in the process. But it had not been raised before this Court. So how could this Court have ever said in its remand order, please address a motion not yet filed? Well, that's why I start off by pointing out there were two related doctrines that govern this. The law of the case doctrine and the law of the scope of mandate doctrine. The law of the case doctrine says that when an agency or a district court decides a case, it'll – that decision will remain unchanged. Now, in this case – Credential doctrine. That's true, Your Honor. But, again, all we have is the board saying it's going to stick to that doctrine. In this case, we had an order of deportation or order of removal that had been entered, a denial of cancellation for removal based on the timing of the proper issuance of the notice to appear. And now, several years later, we've got this alien who's already had one shot before the board and one shot before the court and now remanded to the board, deciding he wants to finally challenge the service of the notice to appear, which he'd previously conceded. Well, let's take the district court analog. Let's say that someone goes into district court. We remand the case. It's been up here. It goes back down and wants to raise a jurisdictional issue. Of course you can raise jurisdiction at any time. Not exactly, Your Honor. Personal jurisdiction, of course, is a little bit different, and that's more or less what was really going to be at issue in this case. All they had to do, perhaps, was to say, well, you already conceded that. But let me get to the broader issue because now this case has been up once because the board didn't address this issue. Now there's been a motion filed, and the holding of the board is not to address the issue but to say, we can't do that because the Ninth Circuit gave a specific remand. And I think that judgment, in my personal view, is incorrect. Well, I don't think the board said they can't. Yeah, that's what it said. It's beyond the scope of the remand. Right. But that issue was not involved in the case. It was a new issue. It was an issue that was directed directly at the board, not at the Ninth Circuit. But my only ñ I guess my global observation is we're wasting a lot of time when the board should have just dealt with all these issues in the first instance. And we see a lot of cases where the board doesn't tie the knots, doesn't complete the record, and then we send it down because there's an unresolved issue. It's not your ñ you know, that's the case. But that's my observation. And this concerns me because it may be a matter of personal jurisdiction to say, well, I suppose we can say on this record it's waived. But if it's subject matter jurisdiction and the board made the same decision, I don't know how we could countenance it. Well, I'd point out the court is correct to raise that concern, but I'd like to take the court just a little bit further along the analog of the district court circumstances. And a case I'd like to point to for the court, and it's not in the brief, and I'm only using it for example and it's not directly governing, is United States v. Pimentel. This was a sentencing case in which a woman had been convicted for some type of offense and had been sentenced, took an appeal to this court. This court, in looking at the ñ in the district court's sentencing, said, well, it's unclear whether the court ñ whether the district court was doing something as a matter of discretion or because it felt it had to. So this court remanded that to the district court, and the scope of its mandate was to address that problem. When the case went back down, the defendant tried to raise up a new defense regarding improper grouping of counts against her, which had never been raised before. The district court declined to address it, saying it's beyond the scope of the mandate. And that woman, again, took an appeal to this court. And this court upheld that application in the scope of the mandate case, noting that its remand was specific and was for a very limited purpose, and that, therefore, the district court ñ It's always dangerous to go into a different area, because we went on Bach on a similar issue, and the government argued, look, it's wide open on remand for sentencing. And the government prevailed on that question, saying, look, if you're going to remand, if you say remand, you aren't limited to what you did before. So it's ñ I'm not ñ I don't want to use up your time, because you have other points to make. But it's a point of rather serious concern to me. And it is, Your Honor. But just to be certain, the case I've cited to you does cite the court's doctrine that when there is a remand, it's wide open, but simply said that in its particular case, that particular remand was limited in context. And the government submits that it's the same here. What's your citation of the case? It's 34 Fed Third 799. And just to build on Your Honor Judge Thomas's comment about danger of going into other areas, again, because this is a jurisdictional issue, perhaps it's a little bit different. But what we do have in this case is ñ and this will be really the final point that I have to make ñ is the notice to appear was personally served on the petitioner in this case. Therefore, there's really no doubt as to really its source, what the purpose of it was, and everything else. That's a little different issue than one we have to decide. Is this the best case you have, that the ñ when we remand for a specific purpose, the Board is only to address that as far as our remand is concerned? I've done a good deal of research, Your Honor, and that's the best analog that I can find. Now, suppose you're right. Suppose the Board could not go any further than our remand. Is there anything at all that would prevent the petitioner from filing a separate petition to reopen to raise this issue? At present, no, Your Honor, except for the time-limit issues. A motion to reopen must be filed within 90 days of a final order. Well, no, at that time. Oh, at that time, Your Honor? Yes. No, there ñ again, we're a little bit ahead of the Board. The Board's not made a finding in this particular area, but the regulations do provide for the filing of one motion to reopen within 90 days. So the Board could restrict it to our remand, and that would not prevent a petitioner from filing a motion to reopen to raise some different issue? Correct. Okay. May I ask one follow-up? Why is that different from a new motion raised? I mean, the motions are directed to the Board. They are independent of our decision on the remand. It could have been done in a separate order. I guess I'm having some difficulty seeing a principal distinction between a motion to remand and a regular motion in this context as limited by the scope of the remand doctrine. Certainly, Your Honor, and I'll have to ask ñ to re-ask you what your question is. I'm having ñ I just don't understand the difference. Why do you think there is a difference when there's a ñ a petitioner ñ I gather your position is the remand would not affect the duty or the right of the Board to decide a motion to reopen if properly filed. The Board could say it's untimely. The Board could say it's time-barred. But the Board would have to address the motion. You'd agree with that? If there were a separate motion, yes, Your Honor. So this comes back down. A motion is filed, not new evidence, not any other submissions. Why is there a ñ what principal distinction do you draw between those two circumstances? The principal distinction I would draw between those two circumstances, Your Honor, is the amount of time that has elapsed. Now, remember that in the immigration context there's a special emphasis on finality and that every delay in yours to the alien's benefit. Now, in this case, it's clear that the alien had, after the first order, 90 days to file a motion to reopen. Didn't do so. Of course, could have raised all these claims in the first order, but didn't do so. Didn't file a motion to reopen within 90 days. Didn't raise the issue to this Court on first appeal, and now it comes back. The only question really before the Court is, was the Board acting within its discretion to treat the only issues raised before it as being the scope of the Court's mandate before it? And the government submits that since it was a limited remand, the Board was within its discretion, using, again, the United States v. Pimentel case as an analog example. We understand your argument. Thank you very much. A little bit of time for rebuttal. Put a minute on. Before you start, did you make sure that the notes accurately reflect government counsel's last name? It's Molino, M-O-L-I-N-O, correct? Actually, Your Honor, it's M-O-L-I-N-A. I-N-A. We had an E. Just want to make sure it's accurate. Go right ahead. The junior is correct, though. Thank you, Your Honor. Go right ahead. The motion that was incorporated into the brief did not challenge the personal jurisdiction. It raised a challenge to the EOIR's subject matter jurisdiction based on the validity of the notice to appear. And I believe that there is a line of cases that the Court refers to that says that the BIA is required to decide a motion that's brought before it. I think that the BIA, as the Ventura case shows, that the BIA has a duty to exercise its expertise when it comes to immigration law and to construct the statutes and the regulations that it's required to enforce. And the Board's remand order in no manner absolved the BIA of its duty to decide whether or not the challenge to the notice to appear was valid. It raised issues regarding the implication of a regulation, whether or not the notice to appear complied with the statute 1229 and Regulation 8 CFR 239.1. The BIA had a duty to address those issues. Okay. The case just argued will be submitted for decision. Just one final comment. Well, I would worry, just as one individual judge, if the Board was using that discretion to stick to the mandate only when it helps the government and not when it helps a petitioner. Just a word to the wise. Thank you both for your arguments.
judges: Wallace, Hawkins, Thomas